DISTRICT OF OREGON

**F I L E D**

**July 05, 2019**

**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re **James Edward Hickam**, Debtor. | Chapter 13<br><br>Case No. 17-33118-dwh13<br><br>Adversary Proceeding No. 19-03012-dwh |
| **James Edward Hickam**, Plaintiff,<br><br>v.<br><br>**Robert Westphal**, Defendant. | MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS [20]<br><br>NOT FOR PUBLICATION |

**I.    Introduction**

The plaintiff, Edward Hickam, is the debtor in this chapter 13 case. The defendant, Robert Westphal, has moved to dismiss this action.[1] For the reasons that follow, I will deny the motion.

---

[1] Docket item (DI) 20.

## II. Background

### A. *Main-case events*

On August 18, 2017, Hickam filed the chapter 13 petition initiating this case.[2] On January 19, 2018, I confirmed his chapter 13 plan.[3]

### B. *Westphal's 2018 adversary proceeding*

On September 14, 2018, Westphal filed in this main case an adversary-proceeding complaint against Hickam and others.[4] On November 29, 2018, I granted Hickam's motion to dismiss.[5] On December 11, 2018, by stipulation, I dismissed without prejudice claims in that action against Ed's Mufflers Unlimited, Inc. (Old Ed's), and Ed's Exhaust & Automotive, Inc. (New Ed's), and I dismissed without prejudice "any pre-petition claims" against Hickam.[6]

### C. *Hickam's 2019 complaint initiating this action*

Hickam initiated this action on February 19, 2019. The complaint includes the following allegations:

- Before filing his petition, Hickam received from Old Ed's assignment of all its assets, including leases.[7]

- On December 26, 2018, Westphal filed a complaint in Multnomah County, Oregon, Circuit Court as Case No. 18CV58697.[8] The first claim for relief claimed that Hickam was liable for certain debts of Old Ed's to Westphal "based upon the continuation of the business after [Hickam] filed bankruptcy."[9]

- Westphal violated section 362 by filing the state-court action "to collect on the pre-petition liability," and "[a]ny pre-petition actions of [Hickam] in transferring

---

[2] Case No. 17-33118-dwh13 (main-case docket), DI 1.
[3] Main-case DIs 16, 46.
[4] Adversary Proceeding (AP) No. 18-3100.
[5] AP 18-3100, DI 18.
[6] AP 18-3100, DI 23.
[7] DI 8 at 2 ¶ 5.
[8] DI 8 at 2 ¶ 10.
[9] DI 8 at 2 ¶ 10.

the assets of [Old Ed's] to himself prior to filing are protected by the automatic stay."[10]

- On January 8, 2018, Hickam, through his lawyer, sent Westphal's lawyer a letter "advising that the transfer of the assets occurred pre-petition, and attaching copies of the documents."[11]

- Hickam seeks compensatory and punitive damages and attorney fees.[12]

Westphal has not answered the complaint.

### D. *State-court complaint*

I will refer to Westphal's 2018 state-court complaint (by contrast to his 2017 state-court complaint discussed below) as the state-court complaint. Copies of the state-court complaint appear as exhibits both to Westphal's motion[13] and the declaration in opposition filed by Hickam's lawyer, Ted Troutman.[14]

The state-court complaint includes the following general allegations.

- Hickam was the sole shareholder, officer, and director of Old Ed's, which employed Westphal.[15]

- On February 22, 2017, Westphal filed a complaint against Old Ed's in Multnomah County Circuit Court alleging claims under Oregon wage-and-hour laws and conversion of employee tax withholding. On the same day, he filed a complaint initiating a U.S. District Court of Oregon civil action alleging claims under the federal Fair Labor Standards Act and under 26 U.S.C. § 7434 for willfully filing fraudulent information returns.[16]

- On an unspecified later date, Hickam transferred all Old Ed's assets to himself.[17]

---

[10] DI 8 at 3 ¶ 11.
[11] DI 8 at 3 ¶¶ 12-13.
[12] DI 8 at 3-4.
[13] DI 20, Ex. 3.
[14] DI 24, Ex. 1.
[15] State-court complaint at 1 ¶ 1.
[16] State-court complaint at 1-2 ¶ 3.
[17] State-court complaint at 2 ¶ 4.

- On February 24, 2018, after confirmation of his chapter 13 plan, he registered New Ed's with the Oregon Secretary of State, and he is the sole shareholder, officer, director, and designated representative of that corporation.[18]

- On May 25, 2018, judgment was entered in the 2017 state-court action in favor of Westphal and against Old Ed's.[19] On June 22, 2018, a supplemental judgment was entered in that action.[20]

- On September 14, 2018, judgment was entered in the district-court action in favor of Westphal.[21]

- In the 2018 state-court complaint, Westphal alleges that, in dismissing Hickam's adversary proceeding, I dismissed claims against Hickam "for actions and omission by him after the filing of his Chapter 13 petition," and Westphal was "told/allowed to pursue those claims in state court, which is why this complaint is being filed." He then states that "[a]ll claims alleged against James Edward 'Ed' Hickam herein are therefore limited to his actions and omissions by him on or after August 18, 2017 at 12:44 p.m.," the petition date.[22] Below, I refer to that sentence as Westphal's disclaimer.

The state-court complaint contains four claims for relief. Each of the general allegations of the complaint is expressly incorporated into each of the four claims for relief. The first claim is entitled "successor liability."[23] It alleges that, under state statutes and federal common law, Hickam and New Ed's are successors to Old Ed's and liable for amounts due to Westphal.[24]

The second claim is entitled "piercing corporation veil."[25] It alleges that Hickam and New Ed's are liable for Old Ed's debts because Hickam controlled both corporations and conducted their business as a "d/b/a" (sole proprietorship), and after filing his bankruptcy

---

[18] State-court complaint at 3 ¶ 12.
[19] State-court complaint at 4 ¶ 14.
[20] State-court complaint at 5 ¶ 15.
[21] State-court complaint at 5 ¶ 16.
[22] State-court complaint at 5 ¶ 17.
[23] State-court complaint at 6 ¶¶ 18-20.
[24] State-court complaint at 6 ¶¶ 19-20.
[25] State-court complaint at 6-7 ¶¶ 21-23.

petition, Hickam fraudulently dissolved Old Ed's and transferred its assets into New Ed's, preventing Westphal from collecting his debt from Old Ed's.[26]

The third claim is entitled "Fraudulent Transfer Act, O.R.S. § 95.200 et seq."[27] It alleges that Hickam fraudulently transferred assets from Old Ed's to himself and then to New Ed's with the actual intent to hinder, delay, or defraud Westphal and without giving Old Ed's reasonably equivalent value, causing Old Ed's to be unable to pay its debt to Westphal.[28] As a result of those transfers, the third claim alleges that Hickam and New Ed's are liable for Westphal's debt.[29]

The fourth claim is entitled "claw-back of assets distributed in dissolution, O.R.S. § 60.645."[30] It alleges that Hickam distributed assets to himself upon the dissolution of Old Ed's without first meeting its obligations to creditors, making him personally liable for Old Ed's debt to Westphal to the extent of the distributed assets.[31]

### E. *Westphal's motion to dismiss*

Westphal filed his motion to dismiss on April 27, 2019.[32] Attached is the declaration of his lawyer, Jon M. Egan.

As filed, the motion seeks dismissal under Federal Rule of Bankruptcy Procedure (Bankruptcy Rule) 7012 and Federal Rule of Civil Procedure (Civil Rule) 12(b)(6), alleging that the complaint fails to state a claim for relief. Because the motion asks me to consider factual matters outside the pleadings, I told the parties that I would treat it as one for summary judgment under Bankruptcy Rule 7056 and Civil Rule 56.[33]

---

[26] State-court complainant at 7 ¶ 22.
[27] State-court complaint at 7-8 ¶¶ 24-26.
[28] State-court complaint at 7 ¶ 25.
[29] State-court complaint at 7 ¶ 26.
[30] State-court complaint ¶ 27-29.
[31] State-court complaint at 8 ¶¶ 28-29.
[32] DI 20.
[33] DI 21.

Page 5 – MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS [20]

Considering my treatment of the motion as one for summary judgment, I interpret it to make two primary arguments. First, by reason of Westphal's disclaimer in the state-court complaint, he argues that the state-court complaint is not based on any prepetition actions of Hickam, nor does it seek to recover from assets that Hickam allegedly bought from Old Ed's before bankruptcy. Thus, Westphal implies, as a matter of law the state-court complaint does not violate the automatic stay.[34] I also infer from the motion three alternate, subordinate arguments (in case I disagree with the first argument): Hickam's evidence that the transfers occurred before bankruptcy is not admissible;[35] less than all of Old Ed's assets were transferred to Hickam before bankruptcy;[36] and Hickam "stole" more than $200,000 from Old Ed's after the petition date.[37]

Second, Westphal argues that Hickam cannot prove that Westphal knew of Hickam's alleged prepetition transfer to himself of any of Old Ed's assets other than equipment, leases, and inventory.[38]

### F. *Hickam's objection to the motion*

Hickam has filed an objection to the motion[39] and supporting declarations of himself,[40] Frank Patrick,[41] Ted Troutman,[42] and Sonja Milam.[43] Those declarations include the following allegations:

---

[34] DI 20 at 1-2.
[35] DI 20 at 2 n.2.
[36] DI 20 at 2-3.
[37] DI 20 at 3.
[38] DI 20 at 2.
[39] DI 22.
[40] DI 25.
[41] DI 23.
[42] DI 24.
[43] DI 26.

- At the time that Hickam filed his chapter 13 petition, he both intended to and did transfer all assets of Old Ed's to himself.[44]

- Patrick, a lawyer for Old Ed's when Hickam filed his bankruptcy petition, prepared three documents conveying assets from Old Ed's to Hickam: two lease assignments, assigning lessee's interests in two real-property leases, and a bill of sale conveying merchantable merchandise at two specified locations and all equipment as set forth in an attached inventory. Copies of those documents, dated August 13, 2017, and signed, are attached to Patrick's declaration.[45]

- Milam served as Old Ed's office manager; she understood that all Old Ed's assets were transferred to Hickam before bankruptcy; and she was present when the transfer occurred.[46]

- After the petition date, all business that had been conducted by Old Ed's facilities was conducted initially by Hickam, doing business as Ed's Automotive Exhaust.[47]

I heard oral argument on June 20, 2019.

### III. Analysis

Summary judgment is proper if the movant is entitled to judgment as a matter of law based on facts about which there is no genuine dispute.[48]

In the complaint in this action, Hickam alleges that the state-court action is barred by 11 U.S.C. § 362,[49] without specifying a particular provision of that section. In his objection to the motion, Hickam cites section 362(a)(1).[50] That provision stays, among other things, the commencement or continuation of a judicial action against the debtor that could have been commenced before the petition date or to recover a claim against the debtor that arose before the petition date. Thus, the state-court action is stayed either if it could have been brought before bankruptcy or if it seeks to recover a claim against Hickam that arose before bankruptcy.

---

[44] Hickam declaration at 1 ¶ 3.
[45] DI 23.
[46] Milam declaration at 1 ¶ 1.
[47] Milam declaration at 2 ¶ 5; Hickam declaration at 2 ¶¶ 6, 10, 11.
[48] Civil Rule 56(a).
[49] Unless otherwise indicated, subsequent references to sections are to those of title 11.
[50] DI 22 at 1.

Page 7 – MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS [20]

### A. *The disclaimer does not immunize Westphal from stay-violation liability.*

As noted above, Westphal's motion makes two primary arguments for dismissal. First, he argues that his state-court complaint on its face cannot be a stay violation because it contains the disclaimer, limiting its claims to actions or omissions after the petition date and disclaiming any recovery from property transferred from Old Ed's to Hickam.

Westphal's theory appears to be that there are two possible outcomes of the state-court litigation with respect to Hickam: either (1) the state court will find that events giving rise to Hickam's liability occurred after the petition date, in which case Westphal wins and there is no stay violation, or (2) the state court will find that those events occurred before bankruptcy, in which case Westphal loses on the merits—but there's still no stay violation due to his disclaimer. Hickam's position is that at least some of the specific acts that Westphal alleges in support of his claims—the undated alleged looting of Old Ed's assets—occurred before bankruptcy.

I don't agree with Westphal that he can circumvent the stay by characterizing the claims as having accrued after the petition date and disclaiming both any right to recover at all if the claims instead turn out to have accrued before bankruptcy and in any case from property that Hickam acquired from Old Ed's before bankruptcy. Granted, if the claims turn out to be ones that accrued before bankruptcy, Westphal will have pleaded himself out of state court by his disclaimer. So, there is some logic to his argument that Hickam has nothing to fear if the claims are found to have accrued before bankruptcy. But the function of the stay is not just to prevent imposition of liability for prepetition claims; it is also to protect the debtor from having to defend litigation in a nonbankruptcy forum over prepetition debts. The litigation itself is the harm that the stay is designed to prevent. If Hickam must try the state-court case to final judgment just to find out that the claims accrued before bankruptcy and are therefore stayed, the damage will have been done.

Page 8 – MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS [20]

Westphal's argument would be stronger had the state-court complaint unequivocally relied only on postpetition events to support his claim that Hickam is liable to Westphal. After describing the prepetition litigation that Westphal commenced on February 22, 2017, the state-court complaint says that Hickam "then fraudulently looted Old Ed's, transferring all of its assets to himself without meeting the corporation's obligations to its creditors."[51] The next paragraph describes the bankruptcy filing on August 18, 2017.[52] The looting allegation is incorporated by reference into each of the four claims for relief, and Westphal does not contend that fewer than all of the general allegations are necessary to support the legal sufficiency of any of the claims. So, the complaint leaves open the possibility that the asset transfer occurred before bankruptcy and that each claim depends on that transfer.

### B. *There is an issue of fact whether Hickam's liability to Westphal arose before bankruptcy.*

In addition to his first primary argument—that the disclaimer immunizes him from stay-violation liability as a matter of law—the motion can be read to include three alternate, subordinate arguments challenging Hickam's ability to prove that his liability to Westphal arose before bankruptcy.

#### 1. **Evidence that the asset transfers from Old Ed's to Hickam occurred before bankruptcy is cognizable in opposition to summary judgment.**

Under Civil Rule 56(c)(2), a summary-judgment movant or opponent may object that material cited by the opponent to support or dispute a fact "cannot be presented in a form that would be admissible in evidence."

---

[51] State-court complaint at 2 ¶ 4.
[52] State-court complaint at 1-6.

In a footnote in the motion, Westphal anticipatorily challenges the admissibility of the lease assignments and bill of sale on the ground that the copies attached to the complaint are not authenticated.[53] But he does not argue that those documents cannot be presented in a form that would be admissible in evidence.

In any case, in opposition to the motion, Hickam has submitted declarations of himself, Patrick, and Milam, which, when read together, are evidence that the lease assignments and bill of sale preceded bankruptcy. Hickam declared that he transferred all assets of Old Ed's to himself at the time he filed his petition. Patrick declared that he prepared the lease assignments and bill of sale, and copies attached to his declaration are dated August 13, 2017, and appear to bear Hickam's signature. And Milam declared that she witnessed the asset transfers before bankruptcy.

Westphal's reply repeats the anticipatory admissibility challenge to the documents attached to the complaint. But it does not mention, much less oppose my consideration of, any of the declarations or the copies of the lease assignments and bill of sale.

### 2. There is a question of fact whether Old Ed's asset transfer to Hickam included all assets.

Westphal argues that the lease assignments and bill of sale copies attached to the complaint in this action "do not even pretend to show that the company's underlying and ongoing business operations, goodwill, intellectual property, key contracts, accounts receivable, or $917.69 bank balance were purchased or otherwise transferred" on August 13, 2017.[54]

---

[53] DI 20 at 2 n. 2.
[54] DI 20 at 2-3.

It is true that the bill of sale does not purport to transfer the categories of assets listed by Westphal. But I have only Westphal's argument—and no evidence—that those assets existed. Hickam says in his declaration that Old Ed's conveyed to him "all of the assets" of Old Ed's.[55] Although Westphal challenges as hearsay the corroborating declarations of Patrick and Milam, he does not, and cannot, challenge Hickam's declaration on that ground.

And even if Westphal had proved the existence of the categories of Old Ed's assets not conveyed by the bill of sale, he has not demonstrated that the omission of those assets from its otherwise complete prebankruptcy asset transfer to Hickam prevented Hickam from acquiring prebankruptcy successor liability for Westphal's claim.

> 3. **There is a question of fact whether Hickam's postpetition use of Old Ed's bank account was wrongful or establishes that Hickam's liability to Westphal arose after bankruptcy.**

Westphal argues that Hickam "stole" more than $200,000 from Old Ed's after the petition date.[56] Westphal appears to base this argument on records of deposits into and withdrawals from Old Ed's bank account after the petition date.[57] Hickam's explanation for this practice is that "[i]t was necessary to continue to collect money in the old Ed's Mufflers Unlimited Inc. account because the new account for Ed's Automotive Exhaust was not set up to accept credit card payments."[58]

If Hickam's explanation is true, then he was not stealing money from Old Ed's after the petition date; he was putting his own money into an account with Old Ed's name on it, then taking it out again. Whether his explanation is true is another question for trial—as is whether

---

[55] DI 25 at 1 ¶ 3.
[56] DI 20 at 3.
[57] DI 20, attached Egan declaration.
[58] DI 26 at 2 ¶ 4; see also DI 25 at 2 ¶ 8.

Page 11 – MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS [20]

Hickam's alleged looting of Old Ed's after the petition date would prevent him from becoming liable for Westphal's debt before bankruptcy, such as by acquiring the leases and property conveyed by the bill of sale.

### C. *Westphal's lack of knowledge of transfers other than the lease assignments and bill of sale does not insulate him from stay-violation liability.*

Westphal's second primary argument in his motion is that Hickam cannot "prove that Mr. Westphal had any knowledge of his alleged pre-petition transfer of anything other than equipment, leases, and inventory to himself"[59] and that his counsel was not aware of any other transfer. I suspect that the purpose of this argument is to show that, even if Westphal violated the stay as to the property other than the equipment, leases, and inventory, he did not do so willfully, a requirement for damages liability under section 362(k).

By negative implication, Westphal's argument allows me to assume, at least for summary judgment, that he, either individually or through his lawyer, *did* know before filing the state-court complaint that Hickam alleged to have transferred to himself before bankruptcy at least Old Ed's equipment, leases, and inventory. If I were to decide at trial that those items were transferred before bankruptcy, giving rise to any liability by Hickam to Westphal, knowledge by Westphal of those transfers could satisfy the willfulness requirement of section 362(k).

At the end of Westphal's lack-of-knowledge argument, he adds that "it should also be noted" that is that Hickam did not pay Old Ed's for its inventory. But Westphal doesn't explain why nonpayment is significant, so I won't address that argument now.

---

[59] DI 20 at 2.

D. *Westphal's reply brief*

1. **The transfers from Old Ed's to Hickam were not void for the reasons stated by Westphal.**

In his reply brief, Westphal raises two new arguments. First, he argues that Hickam's purported prepetition transfer of assets from Old Ed's to himself was void and thus any transfer must have occurred after the petition date.[60] I disagree.

Westphal points to a series of Oregon statutes, a 1939 decision of the Oregon Supreme Court, and an Oregon bar publication to support this argument. The statutes lay out the corporate formalities that are required for a sale of all a corporation's assets, but they don't provide that the transaction is void if the formalities are ignored, as Westphal argues. The supreme court decision, *Erickson v. Grande Ronde Lumber Co.*,[61] is relevant to his theories of liability because it discusses the circumstances under which a buyer of corporate assets becomes liable for the corporation's debts—but it does not discuss voidness. The bar publication, Advising Oregon Businesses, says that a transaction that drains a corporation of its assets and leaves it unable to pay its debts "is void against creditors of the selling corporation, and the creditors may look to the buyer for satisfaction of their claims to the extent of the value of the assets received by the buyer."[62] Although that statement uses the word "void," it does not support Westphal's position. First, it cites only the *Erickson* case for support, which as I've noted does not say that the transaction is void. Second, the quoted language seems to be using the word "void" in an unusual way. If the transaction were void, the assets would remain with the seller, and the creditors would not have to "look to the buyer" for satisfaction. The authors must have meant that the

---

[60] DI 27 at 3-4.
[61] 162 Or. 556, 568 (1939).
[62] 3 Advising Or. Businesses § 52.12-1(d).

transaction is without prejudice to the creditors' ability to recover from the assets, not that it's void.

### 2. The inapplicability to this action of section 362(a)(3) does not affect the applicability of section 362(a)(1).

A second argument that Westphal raises in his reply brief is that he cannot have violated section 362(a)(3) (the stay against actions to obtain property of the estate) because all estate property revested in Hickam upon plan confirmation.[63]

Hickam has not cited section 362(a)(3) in his complaint or objection to the motion, and I don't understand it to be part of his claim. He does cite section 362(a)(1)[64]—which prevents acts to collect from the debtor a debt that could have been collected prebankruptcy.

Thus, I also reject Westphal's revesting argument.

### E. *Westphal's oral argument*

At oral argument, Westphal's lawyer suggested that the state-court action is not a stay violation because I told him to bring that action. I disagree. He apparently refers to the stipulated order dismissing Westphal's adversary proceeding, which dismissed without prejudice claims against Hickam "for actions and omissions by him after the filing of his Chapter 13 petition." That order did not direct or authorize the filing of his state-court complaint, nor did it determine whether pursing the claims dismissed without prejudice would violate the stay.

## IV. Conclusion

Because there are genuine issues of fact about whether Hickam transferred any assets from Old Ed's to himself before bankruptcy, there are also genuine issues of fact about whether Hickam became liable to Westphal before bankruptcy and whether the state-court action is

---

[63] DI 27 at 4-5.
[64] DI 22 at 1.

therefore stayed because it could have been brought before bankruptcy or it seeks to recover a claim that arose before bankruptcy.

By denying the motion, I decide only that—on this summary-judgment record—Hickam could have incurred personal liability for Old Ed's debt to Westphal before his bankruptcy, and thus any effort to collect that debt after the petition date—regardless of any postbankruptcy events—could violate the stay. I will determine at trial, based only on the trial record, whether Westphal's claims in fact violate the stay. In other words, by denying summary judgment, I have not determined my ruling on the trial record whether Westphal's state-court action violates the stay. I have also not decided, and won't decide at trial, the merits of Westphal's state-court claims.

I will separately prepare and enter an order denying the motion—as well as Westphal's included request for an award of fees and costs under Bankruptcy Rule 9011 and 28 U.S.C. § 1927. I remind the parties that, under Bankruptcy Rule 9011(c)(1)(A), any request for sanctions under that rule must be made by separate motion and not be contained in another motion.

At the July 16, 2019, continued pretrial conference, the parties should be prepared with witness availabilities in order to discuss scheduling the trial in this action.